v.

**LAKE COUNTY DEPARTMENT OF PUBLIC WELFARE,**
**Petitioner-Appellee.**

No. 3–784A209.

Court of Appeals of Indiana,
Third District.

Oct. 22, 1985.

William T. Enslen, Timothy O. Malloy, Enslen, Enslen & Matthews, Hammond, for appellants-respondents.

Dora A. Arechiga, Bd. Atty., Maria Luz Corona, Asst. Bd. Atty., Gary, for petitioner-appellee.

GARRARD, Judge.

L.J.F., the juvenile in this case, is a runaway. In 1982, when she was fourteen, she ran away from home three times and then ran away from a voluntary placement at Phoenix House and a detention at Carmelite Home for Girls.

In January 1983 a CHINS petition was filed and in May she was determined to be a child in need of services. *See* IC 31–6–4–13.5. However, she continued to run away from various placements. On November 15, 1983 the juvenile judge found her in contempt,[1] determined that she should be placed at Excelsior Home in Denver, Colorado, and ordered a reimbursement hearing set for November 21, 1983.

At the November 21 hearing L.J.F.'s father was present. He was ordered to repay the welfare department the full cost of L.J.F.'s care at Excelsior Home (which apparently totals more than $2,000 per month) at the rate of $100 per month.

This appeal first challenges the propriety of the reimbursement order entered November 21st.

The version of IC 31–6–4–18 in effect at the time of the hearing,[2] provided, in pertinent part, as follows:

---

1. This was error. *W.M. v. State* (1982), Ind. App., 437 N.E.2d 1028.

2. The section was again amended slightly in 1984.

"(a) The cost of any services ordered by the juvenile court for any child or his parent, guardian, or custodian, and the cost of returning a child under IC 31–6–10 *shall be paid by the county and the county council shall provide sufficient funds* to meet the court's requirements.

(b) The *parent* or guardian of the estate of a child adjudicated a delinquent child or a child in need of services *is financially responsible* for any services ordered by the court *unless:*

(1) *he is unable to pay for them;*

(2) *payment would force an unreasonable hardship on the family; or*

(3) *justice would not be served by ordering payment.*

(c) The parent or guardian of the estate of any child returned to Indiana under the interstate compact on juveniles (IC 31–6–10) shall reimburse the county for all costs involved in returning the child, whether or not the child has been adjudicated a delinquent child or a child in need of services.

(d) At the dispositional hearing or any other hearing to consider modification of a dispositional decree, the juvenile court may determine the ability of a parent or guardian of the estate, to pay for services provided to himself or his child.

(e) The juvenile *court shall require* the parent or guardian of the estate to reimburse the county in a *manner that will cause the least hardship.*" (our emphasis)

Clearly the language of the statute requires the county to pay the cost of services ordered by the court. Subsection (b) then provides that the parent or guardian of the estate will be "financially responsible" for those expenditures UNLESS one of three determinations excuses that responsibility, in whole or in part.

Equally clearly, subsection (d) contemplates a hearing to determine reimbursement issues. *See also* IC 31–6–4–13.5(e)(3) recognizing, *inter alia* the right to controvert allegations concerning financial responsibility. At such hearings the burden of proof is a preponderance of the evidence, IC 31–6–7–13, and the Indiana Rules of Trial Procedure apply. IC 31–6–7–1.

Instead the hearing of November 21st commenced with the referee advising L.J.F.'s father that he was responsible for repaying the entire cost of placing L.J.F. at Excelsior.[3] The father indicated that at that time he could afford to pay $100 per month for L.J.F.'s care but he did not know how long that would continue.[4] No evidence was presented as to the family's other assets or needs. Incredibly, when the father indicated he felt he could not afford the entire expense and asked the referee how he could secure financial aid in caring for L.J.F., the referee responded, "Oh, I haven't the faintest idea, sir."

The procedures employed at the reimbursement hearing were clearly contrary to law. The orders of November 21, 1983 are reversed.

Unfortunately the same defects exist concerning the hearing of November 15, 1983.[5]

The matters to be considered at a dispositional hearing are set forth in IC 31–6–4–16, including a requirement that the court enter findings of fact and specify its reasons for the action taken. IC 31–6–7–16 authorizes the modification of dispositional decrees, but IC 31–6–4–19 requires the court in considering a modification to follow IC 34–6–7–16. The court did not follow these procedures in determining to change L.J.F.'s placement, and its order of November 15 must also be reversed.

---

3. Indeed, at the end of the November 15 hearing the judge announced, "I will order a full reimbursement versus parents."

4. If L.J.F. remained at Excelsior a year, the father would be obligated for more than twenty years at this figure.

5. We recognize these may have arisen from the court's apparent inawareness of *W.M. v. State* (1982), Ind.App., 437 N.E.2d 1028, and the belief that it could treat the matter as a contempt proceeding.

The orders of November 15 and 21, 1983 are reversed and this case is remanded for further proceedings consistent herewith.

Reversed and remanded.

STATON, P.J., and HOFFMAN, J., concur.